[No. 2,495.]

## JOSEPH K. CORREA v. GEORGE FRIETAS, F. P. VARGAS, A. G. ROSE, M. R. HOME, AND A. D. COSTA.

MINING LAW—EXTENSION OF FLUME ON ONE'S OWN CLAIM NOT A NUISANCE.—Where defendants owned and possessed a hydraulic claim on Dutch Ravine, into which their flume emptied, and plaintiff, being the owner of a claim below, dug a ditch, commencing on defendants' claim but below their flume, for the purpose of appropriating the water discharged therefrom, and thereupon defendants' extended their flume further down on their own claim but so as to prevent such appropriation by plaintiff: *held*, that defendants' had a right to such extension, though there might be a question as to whether it served any useful purpose or not, and that it could not be abated by plaintiff as a nuisance.

EXTENT OF RIGHT OF POSSESSOR OF MINING CLAIM.—The owner and possessor of a mining claim on public land has a right to prevent any subsequent comer from erecting or constructing any superstructure, cut, or ditch on his claim, unless the right to construct the same is given by some mining custom or regulation.

CHARACTER OF POSSESSION OF MINING CLAIMS.—The character of the possession necessary to work mining claims will vary with the nature of the mines, the mode adopted in working them, and, perhaps, with the character of the country.

PRESUMPTION AS TO USE OF ENTIRE MINING CLAIM.—If parties are allowed by mining regulations to include within their claim land outside of that which they expect to work, it will be presumed, in the absence of proof to

the contrary, that it is for the convenience of working the claims, and that its possession is necessary.

RIGHT OF OWNER TO EVERY PORTION OF MINING CLAIM.—Evidence that a portion of a mining claim is not valuable for mining purposes is not admissible, on general principles, to prove that the owner of the claim has no right to hold such portion.

APPEAL from the District Court of the Fourteenth Judicial District, Placer County.

The plaintiff, in his complaint, claimed that the extension of the flume, referred to in the opinion, and which was near the Town of Newcastle, in Placer County, was constructed to annoy and injure him, and prayed that it might be abated as a nuisance and for damages. Defendants set up their ownership of the claim upon which their flume was extended, and plaintiff's unlawful interference therewith; denied that the extension was a nuisance, and averred that it was a proper and necessary means of working their claim. The cause was tried before a jury, which returned a verdict in favor of plaintiff for one hundred dollars damages. Judgment was entered for such damages, declaring the extension of the flume to be a nuisance, and directing it to be abated and removed by the Sheriff. Defendants appealed.

*T. B. McFarland* and *E. L. Craig,* for Appellants.

The possessor of public land, being the owner as against all the world, except the General Government, is, as such owner, entitled to the undisturbed enjoyment of it, no matter how valueless it may be; and he alone has the right to determine how he can most profitably use it. (*Doran* v. *Central P. R. R. Co.,* 24 Cal. 257; *Tartar* v. *Spring Creek Co.,* 5 Cal. 397; *Merced Mining Co.* v. *Fremont,* 7 Cal. 320; *McKeon* v. *Bisbee,* 9 Cal. 141; *Merritt* v. *Judd,* 14 Cal. 64; *Hughes* v. *Devlin,* 23 Cal. 505.)

Possession of public land for mining purposes and as mining claims, is as perfect and gives as many rights as the

possession of land for agricultural or any other purpose. (*English* v. *Johnson*, 17 Cal. 107; *Atwood* v. *Fricot*, 17 Cal. 37; *Esmond* v. *Chew*, 15 Cal. 142.)

There was error in refusing defendants' instruction and in the charge given by the Court below, because said refusal and charge went upon the erroneous theory that although defendants were the owners and in the possession of the land, still the plaintiff might enter upon it, construct a ditch upon it, divert the water away from it, and compel defendants to take down their flume which they had erected upon their own land, if, in the opinion of the jury, defendants were not injured thereby. Such a doctrine is in direct conflict with the authorities, and destructive of the very idea of private property.

Again, the Court below decided that the flume of defendants, erected on their own land, was a nuisance, not because it injuriously affected the land of anybody else, but because it prevented plaintiff from coming upon defendants' land and using it as his own. This is a new definition of a nuisance.

*Fellows & Norton*, for Respondent.

The question involved in this case—and it is a very important one—is simply whether a person who at one time located a mining claim, and afterwards worked it out, has the right for all time to come, as against everybody except the Government, to prevent the ground so located for mining purposes to be used for other purposes by other parties, not in any way interfering with the proper working of the mining claim.

The doctrine invoked by appellant in reference to the rights of the owner of land to its undisturbed enjoyment, no matter how valueless it may be, may be very good in its place, but it has no application to this case, for the defendants do not claim to own the land. The instructions refused by the Court, as well as those given, all proceed upon the

theory that the mining claim of defendants is located upon public land. The United States, the owner of the land, gives the right to all persons to construct canals and ditches for mining, agricultural, and manufacturing purposes. (14 U. S. Stats. at Large, 251.)

We are not aware that the precise question involved has ever been decided by this Court; but the doctrine held in *Gregory* v. *Harris*, went upon the theory that the ownership of a mining claim located upon the public domain was a special kind of property; that is to say, that the owner had the right to work the mine for the precious metals therein contained, but that his right to the mine did not amount to the rights of an owner in fee of the land.

By the Court, TEMPLE, J.:

The defendants were the owners and in possession of certain mining claims situate on Dutch Ravine, including the bed and banks of the ravine. They worked their claims by the hydraulic process, and had leading down the ravine a tail flume, used for carrying off their tailings and water, and for collecting and saving their gold. While the defendants were working their claims in this manner, the plaintiff, who owned mining claims below the defendants, commenced the construction of a ditch below the lower end of defendants' flume, but upon the mining claims of defendants, for the purpose of appropriating the water discharged from the defendants' flume for his own use in working his claim. The water used by defendants consisted of the natural water of the ravine, and other water purchased by them from a ditch company.

About the time plaintiff's ditch was completed, but before water had been turned into it, defendants extended their flume to a point on the ravine below plaintiff's ditch, so that it was impossible for plaintiff to turn the water into his ditch.

The terminus of the flume, as extended, is still upon the mining claims of the defendants.

It is claimed that the extension of the defendants' flume could serve no useful purpose, and was done maliciously to deprive plaintiff of the use of the water; and this suit is brought to abate it (the extended portion) as a nuisance.

The evidence upon the trial was conflicting upon the question whether the extension to the ditch was advantageous to defendants in working their claims, and upon the question whether the maintenance of the plaintiff's ditch would interfere with the flow of water and tailings from the defendants' flume. The evidence tended to prove that the portion of defendants' claims through which plaintiff's ditch was cut was worthless for mining purposes. This evidence was admitted against the objections of defendants' counsel, as was evidence which tended to show that the extension of defendants' flume was not beneficial to the working of their claims.

The defendants asked the Court to instruct the jury that "the owner and possessor of a mining claim on the public domain has a right to prevent any subsequent comer from erecting or constructing any superstructure, cut, or ditch, on his claim, unless the right to construct the same is given by some mining custom or regulation." This instruction was refused, but the Court instructed the jury, in effect, that if the plaintiff was the owner of a mining claim on the same ravine, below the defendants, he had a right to use the natural waters of the ravine for the purpose of working his claim; that he could lawfully construct a ditch upon the mining ground of the defendants for that purpose, provided he in nowise obstructed or interfered with the defendants in the proper working of their mining ground, nor in their perfect enjoyment of the same for mining purposes; that one person might appropriate public mineral land for mining purposes, and another party use the same for a different purpose, provided the different uses did not conflict.

These rulings and instructions are assigned as error, upon an appeal from the judgment on the part of defendants.

Ordinarily, when one takes possession of land he is presumed to appropriate it for all purposes. Thus, when one. takes possession of a tract for farming purposes, and incloses it, it would not be competent for another to show his right to dig for coal upon it by proving that he does not interfere with the possession necessary for farming purposes on the part of the farmer. Very frequently, however, possession is taken of land for purposes purely temporary, and under circumstances which do not indicate a claim of ownership. Of such a character, doubtless, is the claim of the locator of a mining claim. The possession itself is generally constructive as to a large portion of the mining ground, and is established by the rules and regulations of the district, or by the custom of miners.

The character of the possession necessary to work mining claims will vary with the nature of the mines, the mode adopted in working them, and, perhaps, with the character of the country. Mining claims are limited in extent; and it must be presumed that it was not intended that the first locator should prevent the working of contiguous claims further than is necessary. At the same time he ought not to be controlled in the mode he may wish to adopt in working his claim further than is necessary for the common good. The rights which the owner of one claim will require with reference to other claims differ with the locality and the character of the claims, and are usually regulated by mining rules or local mining customs. Some mining customs of a general nature, which have been repeatedly recognized by judicial decisions, may be said to have become a part of the common law of the land; but I know of no such general custom upon the point involved in this case.

Upon general principles the fact that the possession of the defendants was a qualified possession, taken for a specific

purpose, would not justify the intrusion of the plaintiff. The flume was extended for the avowed reason that it was necessary to enable the defendants to work their claims to advantage. In the absence of some custom which would restrict their right of possession, they ought not to be deprived of that right, because another may be able to convince a jury that such extension is really not beneficial to the working of their mine. If this could be done, another might deprive them of a portion which was still left, and they would not be able to work their claim according to their own judgment, but might be compelled to vary their operations to suit the whims of witnesses and jurors.

The evidence that the ground was not valuable for mining purposes could not be admissible, on general principles, to prove that defendants had no right to hold it. If the title to mining ground could be defeated by such evidence, no claim which was not paying could be considered secure. If parties are allowed by the mining regulations to include within their claims land outside of that which they expect to work, we must suppose, in the absence of proof to the contrary, that it is for the convenience of working the claims, and that its possession is necessary. The evidence was, therefore, improperly admitted, and the instructions given were erroneous.

Judgment reversed, and cause remanded for a new trial.


CROCKETT, J., dissenting:

I dissent.